# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| KRISTY COWAN MCNEIL, | ) | |
|---|---|---|
| | ) | |
| Petitioner, | ) | |
| | ) | CIVIL ACTION NO. 07-0805-WS |
| v. | ) | |
| | ) | CRIM. ACTION NO. 06-0048-WS |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER

This matter is before the Court on the petitioner's motion to vacate. (Doc. 26). The petitioner filed a memorandum and exhibits in support of her motion, (Doc. 30), the respondent filed a brief and exhibits in opposition, (Doc. 34), and the petitioner declined to file a reply. (Doc. 35).

## BACKGROUND

The petitioner was charged in a one-count indictment with bank fraud in violation of 18 U.S.C. § 1344. (Doc. 1). She pleaded guilty to this charge, (Doc. 12), but did not enter a plea agreement and did not stipulate to the amount of loss. (Doc. 32 at 12, 25).

The indictment estimated the amount of the bank's loss at $56,715.34, (Doc. 1 at 2), representing a number of forged checks from the defendant's employer. The base offense level was 7, but because the amount of loss was between $30,000 and $70,000, six levels were added. Because the petitioner had a criminal history category of I, the guideline range was 12 to 18 months. Counsel argued at sentencing for an alternative to incarceration, but the Court sentenced the petitioner to 12 months and one day imprisonment, followed by a supervised release term of five years, and ordered the petitioner to pay restitution to the bank and other victims in the cumulative amount of $56,716.04. (Doc. 19). There was no appeal.

The petitioner presents the following claims:

(1) Counsel was ineffective by failing to challenge the amount of loss at or before sentencing;

(2) Counsel was ineffective by failing to appeal the sentence and restitution order to the extent based on the amount of loss;

(3) Counsel was ineffective by failing to question whether a conviction of bank fraud could be sustained;

(4) The Court should lower the restitution amount, lower the amount and frequency of payments, and shorten the term of supervised release.

## DISCUSSION

To establish ineffective assistance of counsel, "a petitioner must show that counsel's performance was deficient and that he was prejudiced by that deficiency. A petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." *Hagins v. United States*, 267 F.3d 1202, 1204-05 (11th Cir. 2001) (internal citations omitted); *accord Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001); *Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir. 1990). Deficient performance requires a showing that counsel's performance is "objectively unreasonable and falls below the wide range of competence demanded of attorneys in criminal cases." *Id.*[1] Prejudice requires a showing of a "reasonable

---

[1] A petitioner "must prove deficient performance by a preponderance of competent evidence, and the standard is reasonableness under prevailing professional norms." *Gallo-Chamorro v. United States*, 233 F.3d 1298, 1303 (11th Cir. 2000). "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that *no* reasonable lawyer, in the circumstances, would have done so. ... Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994) (emphasis added) (internal quotations and citations omitted).

probability that the result of the proceedings would have been different had counsel not performed deficiently." *Id.*[2]

"Conclusory allegations of ineffective assistance are insufficient." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (internal quotes omitted). Furthermore, "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance" of counsel. *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994). Rather, an attorney's performance may be found ineffective in the constitutional sense only if "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

**A. Ineffective Assistance – Amount of Loss.**

As noted, the Court determined the amount of loss to be $56,716.04, and it ordered restitution to three victims in this amount. The amount of loss was obtained from the three victims, (Doc. 14 at 4), and it was consistent with an affidavit from the petitioner's employer which listed over 50 checks forged by the petitioner with a total amount of $56,715.34. (Doc. 30, Exhibit E).

The petitioner asserts that counsel performed deficiently by failing to challenge the amount of loss at or before sentencing. This failure prejudiced her, she says, because a loss of less than $30,000 would have lowered her guideline range and made her eligible to avoid incarceration altogether, and because a lower loss would have resulted in a lower restitution amount. (Doc. 30 at 5, 8).

The petitioner's challenge to the amount of loss depends on her W-2 form for 2005 and on a wage report from the Alabama Department of Industrial Relations

---

[2]A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." *Gallo-Chamorro*, 233 F.3d at 1303-04. A petitioner must show that the errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Cross*, 893 F.2d at 1292 (citation omitted).

("ADIR"). (Doc. 30, Exhibits B, D). These show her 2005 income to be between $50,400 and $52,400. According to the petitioner, she unvoided the checks she had forged, so that her W-2 and the ADIR report reflect both her legitimate salary and her income from the forgeries in 2005; since her salary was $40,000, she concludes her forged checks could not have totaled more than about $16,000 (including reimbursement checks that would not show as wages on the W-2 or ADIR report). (Doc. 30 at 3-4, 8). The petitioner asserts that she showed counsel the W-2 and, to corroborate her theory, asked him to obtain hard copies of her legitimate checks and her forged checks, but he refused. (*Id*. at 4, 7).

Counsel agrees that the petitioner showed him the W-2 and made the request, but he supplies additional information the petitioner omits and does not challenge. First, the government had already produced the forged checks, so there could be no need to obtain them. Second, counsel had reviewed these checks with the petitioner, and she informed him she could not identify any of these checks as being legitimate. Third, and as detailed more fully below, when the petitioner presented counsel the W-2 he could not determine from her version of events that she had in fact forged less than the amount charged. Fourth, the petitioner had stressed to counsel that her primary concern was to minimize her incarceration period, not her restitution amount. Fifth, the government advised counsel that, should the petitioner challenge the $56,716.04 figure at sentencing, the government would withdraw its informal agreement to stand silent at sentencing, increasing the risk that the petitioner would receive a longer sentence.

Judicial acceptance of the petitioner's position on the amount of loss was unlikely from the outset. First, it depended on uncritical acceptance of the petitioner's assertion that she had magnanimously unvoided all of her forged checks from 2005 rather than only a subset of them. Second, not all of the loss occurred in 2005, and the loss that

occurred in 2004 and 2006 would not be addressed in 2005 documents.[3] Third, some of the loss occurred through forged reimbursement checks, which would not have shown up in a W-2. Fourth, the pattern of checks reflects that the petitioner repeatedly forged multiple payroll checks to herself on the same day or within a few days. (Doc. 30, Exhibit E). Fifth, the petitioner's employer, who identified the forged checks and who presumably can tell the difference between his own signature and a forgery, identified $56,715.34 in forged checks, and the petitioner herself cannot, from her personal inspection of the forged checks, identify a single one that is not in fact forged.

"[A] court must not second-guess counsel's strategy," and "reliance on [one] line of defense to [the] exclusion of others is [a] matter of strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 n.14 (11th Cir. 2000) (en banc). An attorney's strategy must be upheld if it is a reasonable one. *Id*. at 1315 n.16. To make this determination, "we need not attempt to divine the lawyer's mental processes underlying the strategy." *Id*. If the course that counsel took is reasonable, "it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of [his selected course] was not a deliberate choice between" courses of action. *Id*.

Under the circumstances presented, counsel did not perform deficiently by declining to challenge the amount of loss. The argument had little chance of success and, if raised, it would have risked a longer prison sentence even though avoiding a longer sentence was the petitioner's top priority. Counsel's choice of strategy was reasonable and his performance therefore not deficient. For want of deficient performance, the petitioner's ineffective assistance claim necessarily fails.

---

[3] The petitioner concedes that several of the checks identified in the owner's affidavit as having been from 2005 were in fact from 2004. (Doc. 30 at 7).

### B. Ineffective Assistance – Failure to Appeal.

The petitioner asserts she was unhappy with the amount of restitution ordered and the length of her supervised release term. She states that she "asked defense counsel if she could appeal the sentence, and he told her no, indicating that if she wanted to do that, she would have to hire another attorney to do it." (Doc. 30 at 4). The petitioner states she did not appeal because she did not have funds to hire a lawyer, and she indicates she would have appealed but for counsel's "misrepresentations to her." (*Id*. at 4-5, 9-10).

Counsel responds that, although he does not recall any specific conversation with the petitioner concerning appeal, his routine practice is to discuss appeal rights with his clients following imposition of sentence. Counsel is certain he did not make the statements attributed to him by the petitioner because he knows full well his responsibility to file a notice of appeal on behalf of a client who desires it, regardless of his own assessment of the merits of an appeal. (Doc. 34, Exhibit 1 at 1).

The Court directed the petitioner to state whether she desires an evidentiary hearing on this claim, (Doc. 37), and the petitioner did not respond. Accordingly, the Court resolves the claim based on the paper submissions. The petitioner's version of events is incredible to the point of absurdity. Her counsel has represented criminal defendants in this District almost 150 times, and he knows as well as anyone both that a defendant can appeal regardless of whether an appeal has any colorable merit and that he is obligated to file a notice of appeal for any defendant who wishes it. He is also fully aware that an indigent defendant being represented by appointed counsel at trial is entitled to appointed counsel on appeal as well, without having to "hire" one. 18 U.S.C. § 3006A(c). There is not the slightest reason in the world to suspect that counsel told the petitioner something so bizarrely contrary to what he knew perfectly well from long experience to be correct. There is, however, every reason to believe that the petitioner either concocted her story or misheard what counsel said. This is especially so since the Court explicitly informed the petitioner at sentencing that she had the right to appeal and could seek to do so in forma pauperis. (Doc. 33 at 19-20).

The Court finds that counsel did not make the misrepresentations the petitioner alleges and did not fail to adequately consult the petitioner concerning appeal. The petitioner makes no assertion that she instructed counsel to file a notice of appeal, and the Court finds that she did not do so. Because counsel's performance was not deficient, the petitioner's claim necessarily fails.

**C. Ineffective Assistance – Sustainable Charge.**

The petitioner argues that she cannot be guilty of bank fraud because she "did not intend to defraud any bank." According to the petitioner, counsel rendered ineffective assistance because he failed to challenge the government's ability to prove this element of the offense. (Doc. 30 at 9).

> Whoever knowingly executes, or attempts to execute, a scheme or artifice –
> (1) to defraud a financial institution; or
> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344. A violation of Section 1344 can be established under either subsection, and the indictment invokes both. "To satisfy either of these two subsections, the Government must prove specific intent to defraud." *United States v. Goldsmith*, 109 F.3d 714, 716 (11th Cir. 1997).

The petitioner offers nothing but her unexplained ipse dixit that she did not intend to defraud a financial institution, which on its face is inadequate to show that no reasonable lawyer would have failed to challenge the government's ability to prove this element of the offense. At any rate, "the mere negotiation of a check with a forged endorsement is sufficient to demonstrate the defendant's requisite intent to defraud the bank …." *United States v. Singer*, 152 Fed. Appx. 869, 876 (11th Cir. 2005). The petitioner admits she negotiated checks with forged endorsements. (Doc. 30 at 3). Thus,

any argument that the government could not prove this element of the offense would have been meritless, and "the failure to raise nonmeritorious issues does not constitute ineffective assistance" of counsel. *Bolender*, 16 F.3d at 1573.

The petitioner appears to suggest, in a similar vein, that counsel was ineffective because he did not challenge the government's ability to prove that she "actually exposed a bank to risk of loss" as opposed to merely intending to expose the bank to a risk of loss. (Doc. 30 at 9). This argument fares no better than her previous one. In the first place, it does not appear that exposure to risk of loss is a separate element of bank fraud in this Circuit. "[W]e believe that 'risk of loss' is merely one way of establishing intent to defraud in bank fraud cases." *United States v. De La Mata*, 266 F.3d 1275, 1298 (11th Cir. 2001). Even if it were a separate element, the petitioner admits that she cashed forged checks at the bank, (Doc. 30 at 3), which patently exposed the bank to risk of loss. The record is clear that the bank did in fact suffer loss from the petitioner's fraud, (Doc. 14 at 4), and the petitioner was ordered to pay restitution to the bank. (Doc. 19 at 5). For all these reasons, counsel could not have been ineffective in failing to raise the petitioner's meritless argument.

### D. Modification of Restitution Amount, Amount and Frequency of Payments, and Supervised Release Term.

The petitioner asks the Court to lower the restitution amount based on the argument presented in Part A and because she cannot pay that much. She asks the Court to lower the frequency and amount of restitution payments because she has no income, many liabilities, and a fractured home life. She asks the Court to shorten her supervised release term because it was allegedly based on an incorrect amount of loss, because it is longer than that of a defendant in the Northern District of Alabama, and because the Court did not articulate why a five-year term was necessary to achieve the objectives of Section 3553(a). (Doc. 30 at 10-12).

"[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, [citation omitted], unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232-33 (11th Cir. 2004). Otherwise, a claim of non-constitutional error is simply not cognizable on a motion to vacate. *Id*. at 1233. Because the petitioner claims only non-constitutional error, she must meet the *Lynn* standard before proceeding.

The petitioner certainly could have asserted on direct appeal that her restitution amount should be lower, that her payment schedule should be more relaxed, and that her supervised release term should be shorter. As discussed in Part B and below, the petitioner could have pursued a direct appeal raising these points, and her failure to do so is not due to error by her counsel. As discussed below, the Court's sentence is not error at all, and it certainly does not work a complete miscarriage of justice. Accordingly, the petitioner's claims cannot be brought under Section 2255.

Even if the petitioner's claims were theoretically cognizable on a motion to vacate, "a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." *Lynn*, 365 F.3d at 1234. This is known as the "procedural default rule." *Id*.

"A defendant can avoid a procedural bar only by establishing one of the two exceptions to the procedural default rule. Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error." *Lynn*, 365 F.3d at 1234 (emphasis in original).[4] Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite his

---

[4] *Cf. Cani v. United States*, 331 F.3d 1210, 1213-14, 1215 & 1214 n.2 (11th Cir. 2003) (employing an "analogous" test of "exceptional circumstances" to preclude most collateral challenges to the amount of restitution).

[9]

failure to show cause for procedural default if a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* (internal quotes omitted). "Such 'actual innocence' must be established by clear and convincing evidence." *Reece v. United States*, 119 F.3d 1462, 1465 n.5 (11th Cir. 1997) (internal quotes omitted).

The second exception to procedural bar is unavailable, both because the petitioner does not assert a constitutional violation and because "there is no evidence establishing that [the petitioner] is actually innocent." *Lynn*, 365 F.3d at 1235.

"[T]o show cause for procedural default, [a petitioner] must show that some objective factor external to the defense prevented [her] or [her] counsel from raising [her] claims on direct appeal and that this factor cannot be fairly attributable to [her] own conduct." *Lynn*, 365 F.3d at 1235. The petitioner's only explanation for her failure to raise these claims on direct appeal is that counsel misrepresented to her that she could not appeal and that she would have to hire another lawyer in order to do so. "Ineffective assistance of counsel can be cause to excuse a procedural default," *Hammond v. Hall*, 586 F.3d 1289, 1323 (11th Cir. 2009), but, as discussed in Part B, counsel was not ineffective. The petitioner has thus failed to establish cause for her procedural default. Due to her procedural default, her claims, even if theoretically cognizable under Section 2255, cannot be considered.

Even were the petitioner's claims properly presented, they could not succeed on their merits. The Court did not err in finding the amount of loss to be $56,716.04 because, as discussed in Part A, the evidence at sentencing showed conclusively and without contradiction that this was the amount of loss, and no evidence suggested a lower figure. The Court did not err in failing to consider the petitioner's ability to pay, because restitution was ordered pursuant to the Mandatory Victims Restitution Act ("MVRA"), which "mandates that a sentencing court order restitution in the full amount, denying the court any discretion to contemplate the defendant's financial condition in making such

order." *United States v. Jones*, 289 F.3d 1260, 1265 (11th Cir. 2002); *accord Cani v. United States*, 331 F.3d 1210, 1214 (11th Cir. 2003).[5]

The Court did not err in establishing a payment schedule, and the petitioner does not assert otherwise. Instead, she suggests she needs a new schedule in light of changed circumstances since sentencing.[6] As noted above, relief under Section 2255 is available only to correct certain forms of past error; it is not a vehicle for tweaking error-free orders to accommodate later events.[7]

The Court did not err in relying on the amount of loss in imposing a five-year supervised release term because, as discussed above, the Court did not err in finding the amount of loss to be $56,716.04.[8] That a single defendant in another district received a

---

[5] The MVRA requires the Court to order restitution upon conviction of "an offense against property … including any offense committed by fraud or deceit …." 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii). Bank fraud is such an offense. *E.g., Jones*, 289 F.3d at 1263-64; *Singer*, 152 Fed. Appx. at 871, 877-78. The MVRA then provides that, "[i]n each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A).

[6] Prior to sentencing, the petitioner and her husband presented a joint, signed financial statement reflecting assets of about $23,000, liabilities of about $54,000, and a positive monthly cash flow, after necessary living expenses, of $3,710. (Doc. 14 at 10-11). The Court imposed a payment schedule of $150 a month, or barely 5% of the household's net monthly cash flow. The changed circumstances include a pending divorce, a predicted inability to find work as a convicted felon, and liabilities now exceeding $100,000.

[7] The government pointed out to the petitioner the existence of 18 U.S.C. § 3664(k) for obtaining a modified payment schedule. (Doc. 34 at 16-17). The petitioner has yet to invoke that procedure.

[8] The petitioner appears to believe she would have been eligible for probation had the Court found a lower amount of loss. (Doc. 30 at 11). This is incorrect. By statute, a person convicted of a Class B felony cannot be given probation. 18 U.S.C. § 3561(A)(1). An offense carrying a maximum term of imprisonment of 25 years or more (but not life imprisonment or death) is a Class B felony. *Id*. § 3559(a)(2). The statutory maximum for bank fraud is 30 years. *Id*. § 1344. Bank fraud is thus a Class B felony. *E.g., United States v. Whitelaw*, 580 F.3d 256, 265 (5th Cir. 2009). Because the United States Code forbids probation, it is irrelevant that a lower amount of loss might have indicated probation under the Sentencing Guidelines.

three-year supervised release term[9] does not demonstrate an unwarranted sentencing disparity, especially since that defendant also received a 30-month prison term, making the total length of her sentence almost identical to the petitioner's. The Court did not err by not "articulat[ing] how five years of supervised release was the minimum necessary to achieve these objectives [of Section 3553(a)]," (Doc. 30 at 12), because it was not required to do so. "[N]othing in *Booker* or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." *United States v. Scott*, 426 F.3d 1344, 1324, 1329 (11th Cir. 2005); *accord United States v. Ghertler*, 605 F.3d 1256, 1262 (11th Cir. 2010). Instead, "an acknowledgment by the district court that it has considered the defendant's arguments and the factors in section 3553(a) is sufficient under *Booker*." *United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005). The Court fully complied with the requirements of these and other cases. (Doc. 33 at 15-19).

### E. Evidentiary Hearing.

"Unless the motion [under Section 2255] and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. However, an evidentiary hearing is not required in every case. For example, no evidentiary hearing is required:

- Where the petitioner's claim is "patently frivolous," *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989);
- Where the claim is "based upon unsupported generalizations," *id.*;

---

[9] Not two years, as represented by the petitioner.

- Where the petitioner has not "allege[d] facts that, if true, would entitle him to relief," *Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002);
- Where the facts alleged are not "reasonably specific [and] non-conclusory," *id*. at 714-15;
- "[W]here the petitioner's allegations are affirmatively contradicted by the record," *id.* at 715;
- Where the petitioner's version of the facts has already been accepted as true, *Turner v. Crosby*, 339 F.3d 1247, 1274-75 (11th Cir. 2003); and
- Where "the district court can determine the merits of the ineffectiveness claim based on the existing record." *Schultz v. Wainwright*, 701 F.2d 900, 901 (11th Cir. 1983).

As is evident from the Court's discussion above, the petitioner's claims are subject to one or more of these exceptions. Accordingly, the petitioner is not entitled to an evidentiary hearing.

## CONCLUSION

For the reasons set forth above, the petitioner's motion to vacate is **denied**. Judgment shall be entered accordingly by separate order.

DONE and ORDERED this 2nd day of August, 2011.

s/WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE